UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GENOEFFA M. MELCHIONNA,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>    **Defendant.** | Civ. No. 19-19692 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

    The plaintiff, Genoeffa M. Melchionna, brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The decision appealed from was partially favorable to Melchionna. The Administrative Law Judge ("ALJ") found that Melchionna was disabled and awarded benefits starting from July 6, 2017. The ALJ found that Melchionna was not disabled, however, prior to that date. It is from that latter determination that Melchionna appeals. For the reasons stated below, the decision is **AFFIRMED**.

**I.  BACKGROUND**[1]

    Melchionna was in a car accident in April 2011. (R. 292, 337.) As a result, she had degenerative disc disease and carpal tunnel syndrome. (R. 294–300, 351–53, 1880–83.) Because there was litigation related to the accident,

---

[1]    Citations to the record are abbreviated as follows:

    DE = docket entry

    R. _ = Administrative Record (DE 7) (the cited page numbers correspond to the number found in the bottom right corner of the page for all DE 5 attachments)

    Pl. Brf. = Melchionna's Moving Brief (DE 16)

    Def. Brf. = Commissioner's Brief (DE 20)

she underwent several independent medical examinations, including by Dr. Bleiweiss, a pain management specialist, in March 2013. (R. 553–57.) Dr. Bleiweiss stated that Melchionna was able to perform activities of daily living without restrictions. (R. 556.) State agency consultants concurred. (R. 92–94, 105, 111.) Other doctors viewed Melchionna's condition differently, opining that the outlook for returning to her employment as a hairdresser was poor. (R. 636, 671–74, 966–67, 1113.) She continued to work part-time as a hairdresser, about eight hours per week. (R. 1884–85.)

Melchionna also had a history of treatment for anxiety and depression, having been diagnosed with major depressive disorder, posttraumatic stress disorder, and a cognitive disorder. (R. 949, 962, 1175.) At one point during treatment, her psychiatrist Dr. Rasin opined that she was "100% psychiatrically disabled from any type of gainful employment." (R. 950.) But two years later, he opined that she could perform simple and daily tasks. (R. 1168.) This improvement was due to medication. (R. 1354, 1357-58, 1362–63.) Still, Dr. Rasin stated that she was "100% psychiatrically disabled" and could not function without medication. (R. 1870, 1175.)

In February 2013, Melchionna applied for DIB, alleging an onset date of August 2012. (R. 175–81.) In 2016, an ALJ denied her claim. (R. 18–47.) She appealed to this Court. In 2018, Judge Vasquez declined to disturb almost all aspects of the decision but remanded on two points. First, it was unclear whether the ALJ had considered Melchionna's obesity at all steps of the analysis. Second, in determining Melchionna's residual functional capacity, the ALJ indicated that Melchionna had the "ability to fidget about in her seat," but it was unclear what that statement meant or why it was relevant. (R. 1558–59.)

During the decision and appeal process, Melchionna suffered two more accidents. In July 2017, Melchionna fell down a flight of stairs, resulting in more physical and mental difficulties. (R. 1973–87.) In April 2018, she was involved in another car accident, worsening her symptoms. (R. 2279, 2319, 2280, 2295.)

On remand, a new ALJ held a hearing and considered the prior record and decision as well as Judge Vasquez's instructions and the new evidence. (R. 1374–75.)

## II. DECISION FOR REVIEW

### A. The Five-Step Process and this Court's Standard of Review

The Social Security Administration uses a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

For the purpose of this appeal, the Court's review of legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings."

3

*Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Decision

The ALJ on remand applied the five-step framework.

At step one, the ALJ determined that Melchionna had not engaged in substantial gainful activity since August 2, 2012, her alleged disability onset date. (R. 1376.)

At step two, the ALJ found that Melchionna had the following severe impairments prior to July 6, 2017: depression, anxiety, PTSD, lumbar radiculopathy, cervical herniated disc, bilateral carpal tunnel syndrome status post release, status post laminectomy, and obesity. (R. 1377.) Beginning on July 6, 2017, the ALJ found that she had additional severe impairments, including post-concussion headaches and migraine headaches. (*Id.*)

At step three, the ALJ found that Melchionna's impairments, individually and in combination, did not meet or equal any of the listed impairments.

At step four, the ALJ made two separate RFC determinations.

For the period prior to July 6, 2017, the ALJ found that Melchionna had the RFC to perform sedentary work with the following limitations:

- Never climb ladders, ropes or scaffolds;
- No contact with unprotected heights or dangerous machinery;
- Occasionally crouch, crawl, stoop, kneel and balance;
- Occasionally handle, finger and feel;
- When seated, can change positions while continuing to sit and work for ten minutes every hour;

- Work that can be learned in one month or less and that involves simple instructions;
- Occasional contact with supervisors and minimal face-to-face contact with the general public;
- Work in proximity of co-workers but not together with them; and
- Will be off task five percent of an eight-hour day and absent one time per month.

(R. 1379.)

For the period beginning on July 6, 2017, the ALJ found that Melchionna had the RFC to perform sedentary work with the following additional limitations:

- When seated needs to get up, stretch and leave the work station for ten minutes of every hour;
- Cannot understand, remember and carry out instructions;
- Cannot respond appropriately to supervisors, co-workers and work pressure;
- Cannot maintain regular attendance or be punctual within customary tolerances; and
- Will be off task more than ten percent of an eight-hour day and absent more than two times per month.

(R. 1393–94.) The ALJ found that she was unable to perform any past relevant work during the relevant period. (R. 1397.)

At step five, the ALJ relied upon vocational expert ("VE") testimony that Melchionna's past relevant work as a hairdresser was a light, skilled occupation. (R. 1419.) The VE testified that a hypothetical individual with her vocational profile could perform other work in the national economy, if, as found by the ALJ, she was limited to a range of unskilled, sedentary work. (R. 1379, 1445–46.) The VE stated that such a hypothetical individual could not perform her past work as a hairdresser but could perform the occupation of a

call-out operator, which encompassed approximately 26,000 jobs in the national economy. (*Id.*)

Based on Melchionna's RFC prior to July 7, 2017, the ALJ found her capable of making a successful adjustment to other work that existed in significant numbers in the national economy. (R. 1398.) However, beginning on July 6, 2017, given the additional limitations in her RFC, the ALJ determined that no jobs existed in significant numbers that she could perform. (R. 1399.) Accordingly, the ALJ concluded that Plaintiff was not disabled prior to July 6, 2017, but became disabled on that date. (R. 1399.)

Melchionna appeals from the adverse portion of the ALJ's decision. She claims that she is also entitled to benefits from her alleged onset date of August 2, 2012, to July 6, 2017. The discussion herein, unless otherwise specified, should be understood to relate to that earlier period for which benefits were denied.

### III. DISCUSSION

Melchionna challenges specific limitations findings in the RFC as either unsupported by evidence or inadequately explained. None of her challenges has merit.

#### A. Change Positions when Seated

Melchionna takes issue with the ALJ's finding that she could, when seated, change positions while continuing to sit and work for ten minutes every hour. (Pl. Brf. at 17–21.) She argues that this finding does not adequately respond to Judge Vasquez's remand instructions and is otherwise unsupported. (*Id.*) She is incorrect on both counts.

First, Judge Vasquez took issue with the prior ALJ's use of the word "fidget." (R. 1555.) Indeed, that word has no defined meaning in the social security context, and it is hard to see how one's ability to fidget is relevant to her RFC. (*Id.*) So Judge Vasquez remanded for a better explanation. (*Id.*) The ALJ avoided the word "fidget" (which had in fact come from Melchionna's own testimony (R. 61)), and instead explained Melchionna's abilities and limitations

6

when it came to sitting for a period. (R. 1391.) Such abilities and limitations are relevant. SSR 96-9P, 1996 WL 374185, at *6 (July 2, 1996). Thus, the ALJ remedied the defect identified by Judge Vasquez.

Second, the ALJ's finding is supported by substantial evidence. Melchionna herself testified that she could only sit for ten minutes before needing to "fidget" to get into a comfortable position. (R. 61.) Moreover, her psychotherapist noted that she "changes position in her chair every few minutes." (R. 1342.) This evidence supported the ALJ's sitting finding.

### B. Climbing, Heights, Crouching, Crawling, and Balance

Melchionna casts as irrelevant the ALJ's finding that she could never climb ladder, ropes or scaffolds; never have contact with unprotected heights or dangerous machinery; or only occasionally crouch, crawl, stoop, kneel and balance. (Pl. Brf. at 21–22.) She also argues that there is no rationale given for this finding. (*Id.*) But these activities are all relevant to unskilled, sedentary occupations generally, even if not to her prior occupation as a hairdresser. SSR 96-9p, 1996 WL 374185 at *7–9. And the ALJ gave a rationale for her findings after extensively reviewing the evidence. (R. 1391.) There is no merit to Melchionna's argument.

### C. Occasionally Handle, Finger, and Feel

Melchionna attacks the ALJ's finding that she was limited to occasional handling, fingering, and feeling. (Pl. Brf. at 22–31.) She raises two challenges in particular.

First, Melchionna argues that the ALJ's opinion is fatally inconsistent because the ALJ found her limited to occasional handling, fingering, and feeling, yet identified three occupations (call-out operator, addressing clerk, and order clerk) that she could have performed, two of which involved *frequent* handling, fingering, and feeling. (Pl's Bfr. at 25–26; R. 1398.) Melchionna is correct that this is an inconsistency, and the Commissioner concedes the point. (Def. Brf. at 21.) Nonetheless, a claimant must show how an error would "affect the outcome of the case." *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d

7

Cir. 2005). Here, it is undisputed that the ALJ correctly identified a third job that required only occasional handling, fingering, and feeling: that of a call-out operator. Jobs as a call-out operator were shown to exist in significant numbers in the national economy such to satisfy the Commissioner's burden at step five. *See* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in *one or more* occupations) having requirements which you are able to meet . . . ." (emphasis added)). As a result, the ALJ's misidentification of two other jobs is harmless. *Nalej v. Berryhill*, Civ. No. 16-3079, 2017 WL 6493144, at *11 (D.N.J. Dec. 19, 2017) (ALJ's error in finding the claimant capable of performing two of three occupations was harmless when the ALJ he did not err as to the third occupation). It is true that ALJ opinions routinely list multiple occupations that an applicant could perform, but that is not a requirement; one is enough, provided that positions exist in significant numbers.

Second, Melchionna argues that call-out operator is an antiquated job that does not exist in large numbers in the national economy. (Pl. Brf. at 28–30.) However, there is support for the ALJ's finding. The VE testified that this occupation still existed. For example, a call-out operator may be a person who takes calls to activate or deactivate a credit card. (R. 1449–51.) The VE testified that, to be sure, there is now some computer usage required, but the job still only requires occasional hand-usage because "heavy typing" is unnecessary. (*Id.*) The ALJ permissibly relied on this opinion. *Steuth v. Comm'r of Soc. Sec.*, Civ. No. 18-16220, 2020 WL 1502985, at *10 (D.N.J. Mar. 30, 2020). Accordingly, Melchionna has identified no error with the ALJ's step five decision.

### D. Mental RFC

Finally, Melchionna challenges the ALJ's mental-health related RFC findings. In particular, she challenges the finding that she would be off task 5% of an eight-hour work and absent only once a month. The reports from her consulting mental health physicians, she says, establish that those rates

8

should be higher. (Pl. Brf. at 32–33.) But the test here is not whether Melchionna can find substantial evidence for her position; the test is whether there is substantial evidence for the ALJ's finding. Here, the ALJ made his finding based on substantial evidence, and gave reasons for discounting Melchionna's evidence. First, the ALJ explained that some of the medical evidence on her mental health showed improvement over time and did not show complete disability, especially Dr. Rasin's opinions. (R. 1393.) Second, the ALJ weighed the state agency consultants' opinions over those of the physicians on the specialized issue of RFC, which the ALJ is entitled to do. (*Id.*) *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 361 (3d Cir. 2011). Accordingly, there was substantial evidence for the mental-health findings in the ALJ's RFC determination.

### IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is affirmed. A separate order will issue.

Dated: March 9, 2021

/s/ Kevin McNulty

---

**Hon. Kevin McNulty
United States District Judge**